**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ADRIANA CARTER,**

**Plaintiff,**

**v.** **Case No. 8:25-cv-1169-AAS**

**FRANK BISIGNANO,**
**Commissioner of the Social**
**Security Administration,**

**Defendant.**
**______________________________________/**

# ORDER

Adriana Carter requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for supplemental security income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including the transcripts of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' memoranda, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

On September 25, 2020, Ms. Carter filed an application for a period of disability and disability insurance benefits (DIB), and on January 27, 2021, she filed an application for SSI. (Tr. 57, 64, 1244–55). Ms. Carter withdrew her

DIB application. (Tr. 515–35). Disability examiners denied Ms. Carter's application initially and on reconsideration. (Tr. 53–63, 65–73, 81–90, 96–105, 107–14). Ms. Carter requested a hearing before an ALJ, which was held on January 26, 2023. (Tr. 35–56). At the hearing, Ms. Carter amended her alleged disability onset date to June 29, 2021. (Tr. 39). The ALJ issued an unfavorable decision to Ms. Carter on February 21, 2023. (Tr. 566–85). Ms. Carter appealed the ALJ's unfavorable decision to this court, and the Commissioner filed an unopposed motion to remand, which the court granted. (Tr. 593–99).

After another administrative hearing on February 6, 2025, the ALJ issued an unfavorable decision on February 13, 2025. (Tr. 512–39). Ms. Carter requested review of the ALJ's decision with the appeals council, which she later withdrew. (Tr. 490, 499–502). On May 6, 2025, Ms. Carter filed this action requesting review of the ALJ's February 13, 2025 decision, which is now ripe for judicial review under 42 U.S.C. § 405(g). (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Ms. Carter was 21 years old on her alleged disability onset date of June 29, 2021, and 25 years old on the date of the ALJ's February 13, 2025 decision. (Tr. 39, 528). Ms. Carter has an eighth-grade education and past work experience as a hostess and a telemarketer. (Tr. 270–71). Ms. Carter alleges disability due to severe anxiety, severe depression, bipolar disorder, a learning

disability, and panic attacks. (Tr. 369).

### B. Summary of the Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. § 416.920(a). First, if a claimant is engaged in substantial gainful activity,[2] she is not disabled. 20 C.F.R. § 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. § 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] *Id.* Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not

---

[1] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 416.920(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 416.972.

[3] A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. 20 C.F.R. § 416.945(a)(1).

prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. § 416.920(g).

At step one, the ALJ found that although Ms. Carter had earnings in 2022 and 2024, this work activity did not rise to substantial gainful activity. (Tr. 518). At step two, the ALJ found Ms. Carter had these severe impairments: depression, learning disorder, borderline intellectual functioning, bipolar disorder, and panic disorder. (*Id.*). The ALJ then found Ms. Carter's impairments or combination of impairments failed to meet or medically equal the severity of an impairment in the Listings. (Tr. 518–20).

The ALJ found Ms. Carter had an RFC to perform full work at all exertional levels, but with these nonexertional limitations:

> [Ms. Carter] can understand, remember, and carry out routine and repetitive instructions and tasks; can manage or deal with occasional changes in routine work settings or duties; cannot perform work requiring a specific production rate or pace, such as assembly lines; can have occasional interaction with the public, coworkers, and supervisors; and can maintain attention and concentration for two hours at a time, but does require the standard morning, lunch, and afternoon breaks.

(Tr. 520–21). At step four, the ALJ found that Ms. Carter had no past relevant work. (Tr. 526). At step five, relying on the testimony of a vocational expert, the ALJ found Ms. Carter can perform work that exists in significant numbers in the national economy. (Tr. 527). Specifically, Ms. Carter can perform occupations such as housekeeper, cleaner, garment sorter, and laundry sorter.

(*Id.*). Based on this analysis, the ALJ found Ms. Carter was not disabled within the meaning of the Social Security Act from June 29, 2021, Ms. Carter's alleged onset date, through February 13, 2025, the date of the ALJ's decision. (*Id.*).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the

court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Ms. Carter raises three issues on appeal: (1) whether the ALJ properly considered Ms. Carter's subjective complaints and the third-party statement of her mother (Doc. 21, pp. 3−19); (2) whether the ALJ had a duty to recontact Danny Guzzi, Psy.D. (*Id.*, pp. 19−24); and (3) whether the ALJ properly considered Ms. Carter's obesity. (*Id.*, pp. 24−28).

#### 1. Whether the ALJ properly considered Ms. Carter's subjective complaints and third-party statements.

Social Security Ruling (SSR) 16-3p and 20 C.F.R. § 416.929(c) instruct an ALJ how to evaluate a claimant's subjective complaints. SSR 16-3p states that the "subjective symptom evaluation is not an examination of an individual's character," but a two-step evaluation of the evidence at hand. *See* SSR 16-3p, 2017 WL 5180304, at *2–3 (Oct. 25, 2017). First, the ALJ "determine[s] whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *3. Then, the ALJ "evaluate[s] the intensity and

persistence of an individual's symptoms . . . and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

Section 416.929(c) states that an ALJ is to "consider all of the available evidence from [a claimant's] medical sources and nonmedical sources about how [the] symptoms affect [a claimant]." 20 C.F.R. § 416.929(c)(1). This section also provides that medical opinions can be relied upon when evaluating a claimant's subjective complaints. *Id.* Further, subsections (c)(2) and (c)(3) specify how the ALJ is to evaluate the subjective complaints. An ALJ is to "carefully consider any other information [a claimant] may submit about [her] symptoms." 20 C.F.R. § 416.929(c)(3).

There are six non-exhaustive factors when evaluating the subjective complaints: a plaintiff's daily activities; "the location, duration, frequency and intensity" of other symptoms; "precipitating and aggravating factors;" "the type, dosage, effectiveness, and side effects" of a claimant's medication taken to alleviate the symptoms; any other treatment for alleviating symptoms; and measures a claimant used to alleviate the symptoms, such as lying down. *Id.* The ALJ may reject testimony about subjective complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). In considering a claimant's subjective complaints, the ALJ may consider whether any inconsistencies exist in the evidence and the extent

to which any conflicts exist between a claimant's statements and the rest of the evidence. 20 C.F.R. § 416.929(c)(4).

Here, the ALJ found Ms. Carter's subjective complaints concerning the "intensity, persistence and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 522). The ALJ went on to detail the medical evidence in the record that rebuts Ms. Carter's subjective complaints. In doing so, the ALJ noted a "pattern of subjective complaints and normal objective findings." (Tr. 524).

The ALJ discussed a June 2021 admission to Harbor New Port Richey "under the auspices of the Baker Act," and that upon admission, Ms. Carter explained she was having a bad day and that it was a misunderstanding with her fiancé. (Tr. 361, 364, 523). During the hospitalization, Ms. Carter denied any outpatient mental health treatment. (Tr. 364, 523). It was noted that Ms. Carter was independent in her activities of daily living, communicated well, and verbalized her needs. (Tr. 365, 523). A mental status examination revealed normal appearance with fair eye contact and full orientation, cooperative behavior, normal motor activity, speech with normal tone, rate, and volume, normal thought content and linear thought process, and fair attention, concentration, judgment, and insight. (*Id.*).

The ALJ then noted that by July 1, 2021, Ms. Carter was tolerating her medication well, with no side effects, and reported an improved mood. (Tr. 361,

523). In addition, the ALJ noted Ms. Carter was described as having positive interactions with staff and peers and reported she felt back to baseline. (*Id.*). Mental status examination at discharge was within normal limits, including good mood, congruent affect, good attention/concentration, good judgment, and good insight. (*Id.*).

Ms. Carter attended a consultative psychological evaluation by Danny Guzzi, Psy.D. (Tr. 334−39, 523). The ALJ noted Ms. Carter reported various mental diagnoses. Mental status examination revealed full orientation, normal motor functioning, normal speech, adequate attention, and concentration, adequate mental flexibility, adequate receptive language, adequate immediate memory, moderately impaired recent memory, adequate remote memory, moderately impaired mental computation, adequate social skills, concrete abstract reasoning, fair judgment related to self-care and social problem solving, fair insight, below average intelligence based on observed vocabulary usage and fund of general information, coherent, logical and goal-directed thought processes, appropriate and unremarkable thought form and content, and no suicidal or homicidal ideations, hallucinations or delusions. (Tr. 336, 523).

In mid-July 2021, Ms. Carter presented for outpatient mental health follow-up and medication management. (Tr. 342−44, 524). Ms. Carter reported taking her medication and an improved mood, adequate sleep, no suicidal or

violent ideations, low energy level, no panic or anxiety symptoms, no irritability, no rage, and no anger issues. (Tr. 342, 524). Mental status examination was unremarkable and revealed appropriate dress and grooming, improved mood, appropriate affect, normal speech rate and tone, logical and coherent thought processes, normal thought content, good insight, appropriate judgment, fully alert and oriented, intact attention and concentration, intact recent and remote memory, and a good fund of knowledge. (Tr. 343, 524). Ms. Carter was assessed with bipolar disorder, and her medication was adjusted. (Tr. 343−44, 524).

Ms. Carter returned for follow-up in August 2021. (Tr. 340−41, 524). On mental status examination, Ms. Carter reported her mood as depressed and labile. (Tr. 340, 524). Ms. Carter was assessed with bipolar affective disorder, and her medication was adjusted. (*Id.*). In September 2021, Ms. Carter reported anger outbursts and mood lability. (Tr. 384, 524). Mental status examination revealed she reported her mood as labile with agitation. (*Id.*). Her medication was again adjusted. (*Id.*). In October 2021, Ms. Carter reported mood swings and irritability, yet a mental status examination was within normal limits. (Tr. 408, 524).

The ALJ then discussed that treatment notes in 2022 reflect a similar pattern of subjective complaints and normal objective findings. (Tr. 524). In January 2022, Ms. Carter reported anxiety and poor sleep, and that her

medication helped with her moods and was tolerated well. (Tr. 446, 524). Mental status examination revealed Ms. Carter reported having generalized anxiety, but other mental status findings were unremarkable. (*Id.*). Similarly, mental status examinations remained mostly unremarkable in April 2022, July 2022, and August 2022, with only one report of labile mood and irritability. (Tr. 484–85, 487–88, 524).

In September 2023, Mr. Carter reported her mood was okay; she rated her depression as 0 out of 10; she reported having an appropriate mood and energy to take care of herself, and she was concentrating well during the interview. (Tr. 525, 782). In August 2023, Ms. Carter underwent a behavioral health assessment. (Tr. 525, 731). Ms. Carter reported that she becomes agitated, argumentative, assaultive, depressed, and impulsive. (Tr. 525, 740). She had no thought abnormality, and her thinking was logical. (*Id.*). In March 2024, Ms. Carter reported that she was managing her anger well and stated she had made significant improvements in impulse control and healthy decision-making. (Tr. 525, 747).

After summarizing the medical records, the ALJ stated that "Overall, the objective and clinical evidence of record fails to support the severity of functional limitation alleged by the claimant in connection with this application and appeal." (Tr. 525). The ALJ referred to intermittent therapy treatment as well as non-compliance with prescribed medications,

acknowledging transportation issues, financial concerns, and lack of health insurance. (*Id.*). The ALJ noted that the record consists mostly of routine outpatient office visits for medication management, with mental status examinations generally within normal limits. (*Id.*). The ALJ acknowledged an inpatient hospitalization but also noted her symptoms improved, and she was discharged the next day. (*Id.*).

The ALJ noted that Ms. Carter was able to engage in a wide range of activities, including working, driving, and living with others. (*Id.*). In addition, the ALJ noted Ms. Carter reported that she prepared her own simple meals, went out once or twice a week, shopped in stores and by phone, participated in social activities in person, on the phone, and by texting. (Tr. 522). The ALJ also noted that Ms. Carter could attend doctor's appointments, take medications, manage funds, handle self-care and personal hygiene, and care for her pets. (Tr. 518–19). Although not dispositive, a claimant's activities may indicate that the claimant's symptoms are less limiting than alleged. *See* 20 C.F.R. § 416.929(c)(3)(i); SSR 16-3p.

The ALJ explained that the objective medical evidence did not support Ms. Carter's alleged degree of limitation. (*Id.*); *see* 20 C.F.R. § 416.929(c)(3)(i) (the ALJ properly considers consistency with objective medical evidence when evaluating subjective symptoms). The ALJ also considered that Ms. Carter's treatment was effective in controlling her mental health symptoms, and she

received only outpatient medication management for her mental impairments. (*Id.*); *see* 20 C.F.R. § 416.929(c)(3)(iv) (the ALJ properly considers the effectiveness of a claimant's medication and treatment during the relevant period). The ALJ also noted Ms. Carter did not receive aggressive treatment, and the record consists mostly of routine outpatient visits for medication management, where mental status examinations were mostly normal. (*Id.*); *see* 20 C.F.R. § 416.929(c)(3)(v) (the ALJ properly considers treatment received when evaluating subjective symptoms).

The ALJ further supported her assessment of Ms. Carter's subjective complaints when she discussed the prior administrative medical findings of state agency psychological consultants, Pauline Hightower, Psy.D., and Barry Morris, Ph.D. (Tr. 526); *see* 20 C.F.R. § 416.929(c)(3) (explaining that the ALJs consider medical opinions and prior administrative medical findings in evaluating subjective complaints); *see also Markuske v. Comm'r Soc. Sec.*, 572 F. App'x 762, 766–67 (11th Cir. 2014) (finding that the ALJ discussion of objective medical evidence in the record provided "adequate reasons" for the decision to partially discredit the claimant's subjective complaints of pain); *Reeves v. Astrue*, 238 F. App'x 507, 514 (11th Cir. 2007) (holding that the ALJ did not err where the record did not support the claimant's subjective testimony of pain and fatigue). Accordingly, substantial evidence supports the ALJ's subjective statements determination. *See Dyer v. Barnhart*, 395 F.3d

1206, 1212 (11th Cir. 2005) (holding that a court commits reversible error by disturbing an ALJ's adequately explained subjective symptom determination).

As for third-party statements, the record includes a "Florida Report of Contact" form that indicates on June 21, 2021, an agency employee spoke by telephone with Ms. Carter's mother, as the ALJ discussed. (Tr. 276). Ms. Carter's mother stated that she suffered from physical limitations. (*Id.*). Ms. Carter contends the ALJ improperly failed to make a finding as to whether he found Ms. Carter's mother's statement credible. However, because the ALJ expressly discounted Ms. Carter's testimony and statements regarding the limiting effects of her impairments, he impliedly discredited the similar statements of Ms. Carter's mother. *See Clyburn v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x. 892, 894–95 (11th Cir. 2014) ("Because the ALJ expressly rejected as not credible [the claimant's] testimony about the severity of her pain and the extent of her limitations, he impliedly rejected the statements in the [claimant's sister's] affidavit as well."); *East v. Barnhart*, 197 F. App'x. 899, 901 n.3 (11th Cir. 2006) ("Because [the claimant's mother's] statements in the [daily activities] questionnaire duplicated and corroborated [the claimant's] testimony, which the ALJ explicitly found not credible, it is 'obvious' that the ALJ implicitly rejected [the claimant's mother's] statements."); *Osborn v. Barnhart*, 194 F. App'x 654, 669 (11th Cir. 2006) (holding the ALJ did not err in failing to specifically mention testimony of the claimant's wife because the

ALJ's "specific and explicit credibility determination" as to the claimant's testimony sufficiently implied rejection of his wife's testimony as well). Thus, the ALJ's evaluation of Ms. Carter's mother's third-party statements was proper.

**2. Whether the ALJ had a duty to recontact Danny Guzzi, Psy.D.**

"Social Security proceedings are inquisitorial rather than adversarial," and "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "This obligation requires the ALJ to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, assist the Claimant in obtaining evidence from his or her treating sources, and order a consultative examination when such an examination is necessary to make an informed decision." *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052, *2 (M.D. Fla. Jan. 28, 2021); 20 C.F.R. § 416.912(b)(1)−(2).

The ALJ's obligation to develop the record "exists even if the claimant is represented by counsel or has waived the right to representation." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted). However,

"[t]here must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which resulted in unfairness or clear prejudice, before the court will remand a case for further development of the record." *Rodriguez-Torres v. Saul*, No. 8:18-CV-1982, 2019 WL 4267955, *4 (M.D. Fla. Sept. 10, 2019*), aff'd sub nom. Torres v. Comm'r of Soc. Sec.*, 819 F. App'x 886 (11th Cir. 2020). "At a minimum, clear prejudice 'requires a showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision.'" *Rivera Perez*, 2021 WL 289052, at *3 (quoting *Kelly v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)); *Thomas-Joseph v. Comm'r of Soc. Sec.*, No. 21-11020, 2022 WL 1769134, *2 (11th Cir. June 1, 2022).

The Commissioner will consider evidence to be insufficient if it does not contain all the information the Commissioner needs to make his determination or decision, such as when the evidence "conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 416.920b(b). According to the regulations:

> If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency . . .

> (i) We may recontact your medical source.[4]

20 C.F.R. § 416.920b(b)(2)(i).

The regulations also provide that an ALJ may require a claimant to undergo a consultative examination if the record evidence is otherwise inadequate to determine whether the claimant is disabled. 20 C.F.R. § 416.919a(b). The Commissioner will consider these factors in reviewing the report:

> (1) Whether the report provides evidence which serves as an adequate basis for decision making in terms of the impairment it assesses;
>
> (2) Whether the report is internally consistent; Whether all the diseases, impairments and complaints described in the history are adequately assessed and reported in the clinical findings; Whether the conclusions correlate the findings from your medical history, clinical examination and laboratory tests and explain all abnormalities;
>
> (3) Whether the report is consistent with the other information available to us within the specialty of the examination requested; Whether the report fails to mention an important or relevant complaint within that specialty that is noted in other evidence in the file (e.g., your blindness in one eye, amputations, pain, alcoholism, depression);
>
> (4) Whether this is an adequate report of examination as compared to standards set out in the course of a medical education; and
>
> (5) Whether the report is properly signed.

[4] "Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law . . ." 20 C.F.R. § 416.902(d).

20 C.F.R. § 416.919p(a)(1)–(5).

If the consultative report is inadequate or incomplete, the Commissioner will contact the medical source and ask them to furnish the missing information or prepare a revised report. 20 C.F.R. § 416.919p(b). An incomplete report lacks: (1) the claimant's major or chief complaints; (2) a detailed description of the history of the claimant's major complaints; (3) a description, and disposition, of pertinent "positive" and "negative" detailed findings based on the history, examination and laboratory tests related to the major complaints, and any other abnormalities or lack thereof reported or found during examination or laboratory testing; (4) the results of laboratory and other tests (e.g., X-rays) performed; (5) a diagnosis and prognosis for the claimant's impairments; or (7) an "explanation or comment on" the claimant's major complaints and any other abnormalities found during the history and examination or reported from the laboratory tests. 20 C.F.R. § 416.919n(c)(1)–(5), (7).

Here, Ms. Carter was referred to a consultative psychological evaluation conducted by Danny Guzzi, Psy.D. (Tr. 334–39). At the consultative evaluation, IQ testing was performed. Because the ALJ did not use the IQ scores to evaluate Listing 12.05, Ms. Carter argues that the ALJ was required to develop the record and order additional testing. However, the ALJ's decision reflects that, regardless of her IQ scores, Ms. Carter cannot show that she met all the

criteria of listing 12.05, specifically the requirement of significant deficits in adaptive functioning. (Tr. 520).

The record reflects that the ALJ had sufficient evidence to assess Ms. Carter's claim for disability and to assess Ms. Carter's RFC. Ms. Carter speculates that if the ALJ recontacted Dr. Guzzi, his RFC would have changed. However, "[m]ere speculation that an additional examination might have changed the results is not sufficient to show prejudice." *Boisvert v. Comm'r of Soc. Sec.*, No. 2:21-CV-35, 2022 WL 4093065, *6 (M.D. Fla. Sept. 7, 2022); *Lyons v. Kijakazi*, No. 22-60539-CIV, 2023 WL 8261261, *4 (S.D. Fla. Feb. 28, 2023) ("But mere speculation is insufficient to warrant remand. An ALJ may recontact a claimant's treating physician if the ALJ decides that the record evidence is insufficient to determine whether the claimant is disabled.").

Under the Regulations, an ALJ has discretion to decide whether to recontact a medical source. *See* 20 C.F.R. § 416.920b(b)(2) (stating that the Commissioner "may recontact [a] medical source," among other alternative measures, to "try to resolve [any] inconsistency or insufficiency" in the evidence). "Moreover, while an ALJ has the discretion to recontact a medical source, request additional existing records, or ask for more information, he is not required to develop the record further when the existing record provides support for the RFC determination." *Daniel R. v. Comm'r, Soc. Sec. Admin.*, No. 4:20-CV-160, 2022 WL 16707088, *6 (N.D. Ga. Jan. 18, 2022) (citing

*Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010)).

Here, as discussed above, the ALJ addressed Ms. Carter's allegations, her testimony, the medical evidence of record, Dr. Guzzi's medical opinion, and the prior administrative medical findings of the state agency's psychological consultants, which support the limitations included in the RFC. (Tr. 520–25). The ALJ had sufficient information to make an informed decision and was not obligated to recontact Dr. Guzzi for additional evidence. Because the ALJ had sufficient evidence to assess Ms. Carter's claims and determine her RFC, and because Ms. Carter failed to show that there were any evidentiary gaps in the record resulting in unfairness or clear prejudice, the ALJ's disability determination was supported by substantial evidence. *Alvarado v. Colvin*, No. 15-62283-CIV, 2016 WL 3551482, *13 (S.D. Fla. June 30, 2016) ("Because the totality of the medical evidence was sufficient for the ALJ to make her conclusion, the ALJ was not required to recontact [the medical source].").

**3. Whether the ALJ properly considered Ms. Carter's obesity.**

The Eleventh Circuit has held that, where a plaintiff fails to allege an impairment, either when she files her application for disability or through testimony at his hearing, the ALJ has no duty to consider such impairment. *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) ("The ALJ [is] under no obligation to investigate a claim not presented at the time of the application

for benefits and not offered at the hearing as a basis for disability." (citation omitted)). Ms. Carter did not mention obesity as a basis for her alleged disability in her disability reports or at her hearings. (Tr. 35−56, 269, 286, 302, 536−59).

The only evidence that Ms. Carter cites is her weight, BMI, and a notation in a June 2021 report stating that a Social Security Administration employee spoke with Ms. Carter's mother and noted she stated Ms. Carter had physical limitations due to her weight. (Doc. 21, pp. 24−25). This is insufficient to demonstrate a severe impairment. Merely because Ms. Carter was obese does not establish that she had additional work-related limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005).

Ms. Carter fails to identify any medical records that support the notion that obesity limits her ability to work. Courts in this circuit have held — specifically concerning obesity — that an ALJ does not err in failing to consider the effect of a plaintiff's obesity on the severity of her other impairments or her RFC where a plaintiff does not allege or testify that his obesity was disabling or caused any limitations, and where nothing in the record suggests such a conclusion. *See Fincher v. Astrue*, No. CV 308-108, 2010 WL 739513, at *3–4 (S.D. Ga. Mar. 1, 2010) (holding that the ALJ was not required to consider the effect of the plaintiff's obesity where the record was "largely devoid of

references to her obesity and only refer[red] to her obesity in passing" and where the plaintiff did not mention obesity in his application or during his hearing); *Ingram v. Astrue*, No. 8.07-CV-1591, 2008 WL 2943287, at *7 (M.D. Fla. July 30, 2008) (holding that the ALJ's failure to address the plaintiff's obesity did not warrant remand because "no physician suggested that Plaintiff's obesity imposed any additional work-related limitations and Plaintiff did not allege any limitation in function as a result of his obesity in his application for benefits or during the hearing"); *Eubanks-Glades v. Colvin*, No. 13-60029-CIV, 2013 WL 12104893, at *8 (S.D. Fla. Nov. 5, 2013) (finding that the ALJ did not err by failing to consider the plaintiff's obesity where the plaintiff did not claim in her application or during the hearing that obesity limited her ability to work, and "[n]o treating or examining physician placed limitations on [her] due to her obesity"), *report and recommendation adopted,* No. 13-60029-CIV, 2013 WL 6116810 (S.D. Fla. Nov. 20, 2013).

Ms. Carter did not state obesity as a basis for her alleged disability. At most, the record evidence cites Ms. Carter's weight and BMI and includes a report notation that Ms. Carter's mother said that Ms. Carter had physical limitations due to her weight. Ms. Carter did not suggest that her weight contributed to her limitations, nor does she point to any medical evidence to that effect. *See Jones v. Astrue*, 863 F. Supp. 2d 1142, 1152–53 (S.D. Ala. 2012). Therefore, the ALJ's failure to consider Ms. Carter's obesity does not constitute

reversible error, and remand is not warranted on this ground.

## IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on August 7, 2026.

Amanda Arnold Sansone

AMANDA ARNOLD SANSONE
United States Magistrate Judge